UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 5:11-CR-114-KKC-REW |
| v. | ) | |
| | ) | |
| AARON CODY POOR and FELICIA | ) | RECOMMENDED DISPOSITION |
| POOR, | ) | |
| | ) | |
| Defendants. | | |

*** *** ***

The Court assesses a motion to suppress filed by Cody Poor and joined by his
wife, Felicia Poor.  DE ##55, 56.  The Poors face Oxycodone (OC) trafficking charges
related to alleged events in and around Garrard County, Kentucky, between November
2010 and March 2011.  DE #1 (Indictment). The motion centers on investigation of a
FedEx package addressed and ultimately delivered (post-interdiction and in controlled
fashion) to Cody Poor on March 3, 2011.  Poor complains that police involvement with
that package violated his Fourth Amendment rights.  The package is, without question, an
integral link in the chain leading ultimately to a warrant-based search of the Poor home
and incriminating remarks from both Poors.  The Poor Defendants seek to suppress the
package and all subsequent fruits.  The United States responded in opposition, DE #63,
and the Court conducted a plenary evidentiary hearing attended and participated in by all
concerned.

1

**I. Summary of Decision**

Law enforcement, through FedEx, seized the Poor package without sufficient grounds under the Fourth Amendment.   That seizure led directly to a positive sniff by a drug dog, which in turn led proximately to a search warrant.  That warrant opened the package, which contained OC, and undergirded a second warrant, this one for search of the Poor home.  Finally, a search of the home and inculpatory Poor interviews ensued. The core of the probable cause supporting the package warrant was the dog's alert to that package; under applicable suppression principles, the later search and statements are fruits of the original tainted package seizure.  The Court thus **RECOMMENDS** the District Judge **GRANT** Cody Poor's motion (DE #55), which Felicia Poor joined without objection from the United States. [1]

---

[1] The Court also **RECOMMENDS GRANTING** Felicia Poor's Motion (DE #56) but has significant doubts about her Fourth Amendment "standing."  She has the burden of proving a protectable interest.  *United States v. Ponder*, 240 Fed. App'x 17, 19 (6th Cir. 2007).  Fourth Amendment rights are personal, not vicarious.  *Rakas v. Illinois*, 99 S. Ct. 421, 425 (1978) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." (citations omitted)).  Felicia Poor is an owner or resident of the house searched, but the focus of this motion is the FedEx package.  Cody Poor was the addressee.  Nothing in the record suggests any interest or privacy expectation of Felicia Poor in the parcel itself, and the Court is unable to discern a protectable right of that Defendant in the FedEx package.  *See, e.g.*, *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988) (addressing scenario where defendant was not addressee, sender, or owner of package:  "Graf's only interest in suppressing the package and its contents is to avoid its evidentiary force against him.  A similar interest exists in every defendant with regard to every piece of evidence . . . and is plainly not protected by the Fourth Amendment."); *United States v. Parks*, 119 Fed. App'x 593, 597-98 (5th Cir. 2004); *United States v. Matthews*, 25 F.3d 1051, at *3 (6th Cir. 1994) (per curiam) (table) (citing *Koenig*) . Here, however, the United States stipulated to Felicia Poor's valid interest, offering no opposition to her motion to join, and stated at the hearing:  "I think she has standing for purposes of this hearing."  DE #73 (Transcript)  at 3.  "If the government does not raise 'standing' as a defense to a defendant's suppression motion, the defense is lost."  *United States v. Knowledge*, 418 Fed. App'x 405, 408 (6th Cir. 2011).   As such, the Court extends this ruling to benefit Felicia Poor.

**II. Hearing and Discussion**

The hearing was extensive and featured testimony from two law enforcement officers—DEA TFO Rob Hart and KSP Detective Bruce Crouch—involved in the package seizure and the later search.  The Court has reviewed all briefing, the full hearing record, and applicable law in reaching this decision.

Per the testimony of TFO Hart, he is the regular contact person for the Lexington Police Department (LPD) with respect to package interdiction.  *See* DE #73 (Transcript) at 8.  Hart has significant temporal experience in interdiction and some targeted training. FedEx contacted him late on March 2, 2011, with respect to two "suspicious" packages. *Id.* at 9; *id.* at 12 ("I don't recall the exact conversation other than the fact that they had a package for us to look at.").  Hart testified that FedEx typically would contact the police based on a concern about driver safety relative to a package delivery location.  *Id.* at 13. During the call with FedEx, Hart learned **only** that FedEx had some concern, not now articulable by Hart, and that the packages were heading to distinct Garrard County addresses.  *See id.* at 46-47 ("Q: And you didn't have anything, any other information at that point when you told FedEx to hold the packages.?  A: No, no."); *id.* at 47 (regarding FedEx's concern:  "If they did [articulate why FedEx was suspicious], I don't recall.").

In response to the call, Hart instructed FedEx to hold the packages pending a drug sniff by a trained dog.  *Id.* at 26 (Q: [D]id you ask them to hold the packages until March 3rd so you could come by with the dog?  A: Yes.); *Id.* at 41 ("Q:  So when you talked to FedEx, you did tell them to hold the package?  A: Yes.").   Hart did not go to FedEx on March 2.  Rather, he waited until the next morning and arrived with a LPD K-9 unit.  *Id.* at 14.  Despite his intentional delay, per Hart, a unit was available 24 hours, and situated

only "twenty to thirty minutes away" from FedEx.  *Id.* at 39.  Hart gave no real

justification for delaying until the next day. *See id.* at 49.

Between the initial call from FedEx and his arrival at the facility some 14 hours

later,  Hart received a call from KSP Det. Bruce Crouch. [2]  *Id.* at 12.  Crouch was on the

lookout for at least one FedEx package expected from Las Vegas to Lancaster (in Garrard

County) that might contain drugs.  Hart provided Crouch the recipient addresses on the

FedEx packages, and Crouch confirmed to Hart that one address was a target of his

investigation.  *See id.* at 45.

Once at FedEx on March 3, Hart visually inspected the packages and noted

several items of concern based on his training and experience.  These included a "priority

overnight" delivery request as to one package, handwritten air bills, the area of origin,

and the area of delivery.  *See id.* at 16, 20 (enumerating and discussing factors).  The

packages were a common size for use in drug trafficking.  *Id.*  K-9 Officer Komara

presented a series of packages to her certified dog Buck, and Buck alerted to the packages

at issue.  Hart then took possession of both packages and applied for a state search

warrant.  Premised largely on the sniff result, a state judge signed a warrant allowing

search of the packages.  DE #55-3 (copy of package warrant).  Each contained

oxycodone.  *See id.* at 56.  Police then, premised on the OC found in the packages,

applied for and received warrants to search the two addresses preparatory to controlled

delivery by law enforcement.  *See* Poor house warrant (offered at hearing as an agreed

tender).

---

[2] The call from FedEx preceded a call from Det. Crouch, which occurred at about 4 p.m.
DE #55-3 (Affidavit) at 2.  The K-9 unit and Hart appeared at FedEx at 8:10 a.m.  the
next day.   DE #73 (Transcript) at 15.

### III. Analysis

    *A.  Fourth Amendment Seizure*

       The motion to suppress centers on the propriety of Hart's conduct, really whether Hart had sufficient cause to effect seizure of Cody Poor's package.  Poor contends that Hart seized the package by securing it at the FedEx facility on March 2.  At the hearing, the United States claimed Hart actually did not seize the package until Hart and Officer Komara presented the packages to Buck on March 3.  This is contrary both to the record and to the position the United States took in briefing.

       In its response, the Government plainly conceded, several times, that Hart made an initial detention decision on March 2, prior to the March 3 K-9 presentation.  *See, e.g.*, DE #63 (Response) at 3 ("Based on this knowledge, his experience and training, Hart had a reasonable suspicion to initially detain the Poor package prior to presentation to a certified drug detection dog."); *id.* at 4 (describing Hart's "reasonable and articulable suspicion of criminal activity [as] . . . enough to initially detain the Poor package.").  Leaving no doubt about the chronology, the United States, in defending the time gap between the March 2 call and March 3 dog sniff, stated:  "The LMPD did not have a canine unit available **at the time Hart detained the Poor package for examination.**"  *Id.* at 5 (emphasis added).

       In addition to the Government's concession in briefing, the record shows a seizure on March 2.  At argument, the United States tried to depict FedEx as acting on its own in holding the package on March 2, but the evidence contradicts the assertion.  Hart explicitly "told" FedEx to hold the package at the time of the initial FedEx call.  DE #73 (Transcript) at 41.  Hart undoubtedly instructed the carrier to maintain the package

pending Hart's criminal investigation.  The Fourth Amendment applies only to governmental actors, but when law enforcement uses a private citizen as a law enforcement instrumentality, the agency relationship brings the citizen's conduct under constitutional scrutiny.

In this Circuit, the two-factor agency analysis includes "'the government's knowledge or acquiescence'" of or in the search or seizure and "'the intent of the party performing the search [or seizure.]'"  *United States v. Hardin*, 539 F.3d 404, 418 (6th Cir. 2008) (quoting *United States v. Howard*, 752 F.2d 220 (6th Cir. 1985), *vacated on other grounds*, 770 F.2d 57, 62 (6th Cir. 1985)).  Here, law enforcement *directed* FedEx to act by holding the parcels on March 2.  The question then becomes whether FedEx's intent in complying was "entirely independent of the government's intent to collect evidence for use in a criminal prosecution."  *Howard*, 752 F.2d at 227-28, *vacated on other grounds*, 770 F.2d 57, 62 (6th Cir. 1985)) ;  *see United States v. Jones*, 2011 WL 5967230, at *2 (W.D. Tenn.) (identifying factors as whether police "'instigated, encouraged, or participated'" in search and whether "'individual . . . engaged in the search with the intent of assisting the police'" (quoting *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985))).  The Fourth Amendment does not apply **if** a private actor is "not acting as an agent of the Government or with the participation or knowledge of any government official."  *United States v. Jacobsen*, 104 S. Ct. at 1652, 1656 (1984) (citation and internal quotation marks omitted).  The burden of proving agency generally falls on the defendant.  *United States v. Aldridge*, 642 F.3d 537, 541 (7th Cir. 2011) (citation omitted).  Here, Hart's own testimony clearly establishes the agency relationship.

There is some testimony indicating that FedEx may have had its own "safety" motivations. DE #73 (Transcript) at 13 ("typical" reason); *id.* at 42 ("usually due to safety"). However, Hart, the only source of such testimony, had no recollection about FedEx's actual motivation or suspicions relative to these packages. *Id.* at 12. Further, Hart testified that the decision to hold the packages rather than notify the customers to come retrieve the parcels late in the day deferred to law enforcement needs. *Id.* at 46 (explaining timing and decision to defer action to the next day: "Generally what FedEx will do **for us** is to make an entry or just hold it **for us** so that **we** can act like it was a misdelivery . . . and **we** tend to do it the next day as if it was just late. It generally draws suspicion with people to have them come to a FedEx location late at night.") (emphasis added). This indicates that FedEx acts collaboratively with law enforcement to encourage effective prosecutions and thus reduce use of FedEx as an unwitting contraband carrier. *Id.* at 42 (Hart describing FedEx's overall motivation: "We would like to collaborate with you all to help end this problem so our drivers can be safe."). Hart even testified that FedEx sometimes will open a package on its own, which in his mind reduces the package to potential intelligence instead of a basis for prosecution. *Id.* at 51 ("I strictly use that information . . . as intelligence. We don't enforce that package.").

Clearly, by stopping Poor's package, through FedEx, Hart was attempting to begin a potential valid prosecution. FedEx actively, and under Hart's instruction, assisted with that effort by holding both packages to allow agency review. This is not a criticism of FedEx's or Hart's motives, but the collaboration does paint FedEx as Hart's

instrumentality in complying and agreeing to hold the packages pending Hart's inspection.

A seizure occurs "when there is some meaningful interference with an individual's possessory interests in that property." *Jacobsen*, 104 S. Ct. at 1656 (footnote omitted). The Supreme Court treats exertion of "dominion and control over [a] package" by government authorities "for their own purposes" as a seizure. *Id.* at 1661 n.18. This Circuit qualifies as a seizure, and requires proper justification for, a brief detention of a package "'for further investigation, such as examination by a drug-sniffing dog.'" *United States v. Alexander*, 540 F.3d 494, 500-01 (6th Cir. 2008) (quoting *United States v. Robinson*, 390 F.3d 853, 870 (6th Cir. 2004)). Here, Hart's direction to FedEx resulted in FedEx holding Poor's package at the Lexington facility for at least 16 hours pending Buck's sniff. Again, the testimony suggests this action did delay Poor's access to the package. Hart testified that it would "generally draw[] suspicion with people to have them come to a FedEx location late at night." *Id.* at 46. At least on this record, Hart's decision to stop the packages introduced a lengthy processing delay and affected Poor's access to his package—this, as such, was a seizure.[3]

---

[3] There is a thread of authority that measures seizure of a parcel in transit by the delay occasioned from any diversionary act. *See, e.g.*, *United States v. Gant*, 112 F.3d 239, 241 (6th Cir. 1997). *Robinson* discussed *Gant* and the idea that temporarily diverting a package "from the ordinary delivery process" would not be a seizure at all. *Robinson*, 390 F.3d at 870. Robinson seemed to blend warrant and reasonable suspicion analysis, however, and did ultimately require "reasonable suspicion" for a "brief investigative detention" of a package. *Id.* The Court finds that Hart's instruction to FedEx resulted in the package being held, solely for investigative reasons, for at least 16 hours. Further, the delay did impact Poor's access to the package. As such, under either theory, the act by Hart on March 2 was a seizure.

B.  *Seizure Propriety*

Reasonable suspicion must support a temporary package seizure, including detention for purposes of "examination by a drug-sniffing dog."  *Alexander*, 540 F.3d at 500-01; *Robinson*, 390 F.3d at 870 (citing standard as "reasonable suspicion that it contained contraband"); *United States v. Elgin*, 57 Fed. App'x 659, 661 (6th Cir. 2003) (citing standard as "reasonable and articulable  suspicion of criminal activity that justified detaining the package until it could be presented to the drug-detection dog") (citation omitted).  This familiar standard is lower than probable cause.  *See Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543-45 (6th Cir. 2002) (discussing *Terry* in application to temporary property seizure).   "It is the Government's burden to demonstrate that a stop . . . satisfies the conditions of . . . *Terry*."  *United States v. Baldwin*, 114 Fed. App'x 675, 681 (6th Cir. 2004).

Borrowing from *Terry* formulations, the government must "point to 'specific and articulable facts, which taken together with rational inferences from those facts,' reasonably suggest" a basis for seizure.  *United States v. Urrieta*, 520 F.3d 569, 573 (6th Cir. 2008).  Courts look to the "totality of the circumstances" at the time of seizure, and an officer must "not act on an 'inchoate and unparticularized suspicion or "hunch," but on . . . specific reasonable inferences[.]'"  *Id.* (quoting *Terry v. Ohio*, 88 S. Ct. 1868, 1883 (1968)); *United States v. Underwood*,  97 F.3d 1453, at *3 (6th Cir. 1996) (table) (applying *Terry* factors to package seizure).

The seizure here occurred when Hart instructed FedEx to hold the packages on March 2. At that point, Hart had **not** spoken to Det. Crouch.[4] Hart also had **not** seen the packages. Thus, Crouch's information and the suspicious factors relative to the packages themselves have no effect on Hart's reasonableness calculus at the time. In fact, the sum total of Hart's contemporaneous information was that a) FedEx had "some" suspicion about the parcels, and b) the parcels were headed to distinct Garrard County addresses. DE #73 (Transcript) at 47 (Hart confirming, under questioning, that FedEx informed him only of general suspicion and recipient addresses); *id.* (Hart confirming that he did not see the packages and get originating address until the next day). Officer Hart trusts FedEx, "When FedEx let me know they have a suspicious package . . . and they have pretty good hunches." *Id.* at 44. Yet, he provided nothing particular that would validate reliance on FedEx generally. More critically, he did not recall and could not provide anything that FedEx relied on for its suspicion at the time: "If they did, I don't recall." *Id.* at 47. As to the addresses, Hart himself knew nothing of the Garrard area. *Id.* at 34. He had no articulated concerns about the recipient addresses. *Id.* at 17.

Officer Hart did not have a reasonable basis for seizing Poor's package. An unarticulated and nonspecific concern from FedEx fails to suffice as a basis for police seizure of a person's shipped parcel.

---

[4] The Sixth Circuit would ignore Det. Crouch's information, since not communicated to Hart at the time of the seizure. *See United States v. Blair*, 524 F.3d 740, 751-52 (6th Cir. 2008) (discussing collective knowledge of law enforcement relative to *Terry* stop, and requiring that stop decision itself be "collective" for doctrine to apply). In any event, Crouch knew nothing about the Poor address at the time. DE #73 (Transcript) at 59-60. Crouch also cited no connection between the two addresses other than the commonality of Garrard County.

C. *Fruits Analysis*

The effect of this ruling, under suppression principles, is to cut the offending resultant evidence from the fabric of the case. *See United States v. Davis*, 430 F.3d 345, 357-58 (6th Cir. 2005) ("Having determined that the search warrant included illegally obtained information . . . we must remove this fact from the affidavit when considering whether there is still sufficient information to establish probable cause. . . .") (citations omitted); *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996) (discussing redaction of tainted evidence in warrant context); *Blair*, 524 F.3d at 753 (because of *Terry* violation, "all evidence seized as a result . . . must be suppressed as 'fruits of the poisonous tree'" (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). The Court must assess the effect of removing the seized evidence from the case. *Shamaeizadeh*, 80 F.3d at 1136. ("'[I]f the lawfully obtained information remaining in a redacted affidavit does not establish probable cause, then the issuance of a warrant would not have been justified and the evidence seized pursuant to the warrant must be suppressed.'" (quoting *United States v. Smith*, 730 F.2d 1052, 1056 (6th Cir. 1984))); *United States v. Johnson*, 142 F. Supp. 2d 895, 910 (S.D. Ohio 2000) ("[T]he tainted portions of the supporting affidavit . . . must be redacted. If the remaining portions . . . establish probable cause, then the evidence obtained as a result . . . will not be suppressed.").

Here, the Government's seizure led directly to evaluation by a drug dog and then a warrant to search Poor's package  Without the positive drug alert, the warrant would not have established probable cause. The United States conceded as much at argument. *See* DE #73 (Transcript) at 82. ("Had the drug dog not alerted on those packages, we

11

wouldn't even be here.").   The affidavit otherwise contains no specific information that would provide a sufficient basis for searching the Poor package.   The warrant turned on Buck's alert and, without that alert, the warrant fails.   Likewise, the warrant for the house itself relied **entirely** on the result of the package search.   Thus, the residence warrant also is not valid because of the primacy of the package content to probable cause.

The United States attempted an oral *Leon* argument at the close of the hearing. *Id.* at 91.   "[T]he Government bears the burden of demonstrating the applicability of the *Leon* good faith exception."   *United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003) (citation omitted).   The parties did not brief that issue, and it is ill-developed.   In this scenario, whether (and how) *Leon* may apply is far from clear.   The Sixth Circuit has categorically stated:   "[W]e agree with the numerous other circuits that have held that the *Leon* good-faith exception is inapplicable where a warrant was secured in part on the basis of an illegal search or seizure."   *Davis*, 430 F.3d at 358 n.4 (citations omitted).   In *United States v. McClain*, 444 F.3d 556, 564-66 (6th Cir. 2006), the Court did apply *Leon* to a warrant partly derivative of a Fourth Amendment violation, but there was not identity between the officer involved in the violation and the officer securing the warrant, and the issuing judge had full awareness of all underlying facts.   *See United States v. Cos*, 498 F.3d 1115, 1133 (10th Cir. 2007) (distinguishing *McClain* based on distinct personnel and warrant scenario).   The Government has the burden under *Leon*, and the Court does not find, on this record, that the United States has met the burden of showing how *Leon* would spare the seizure at issue.

**IV. Conclusion**

For the reasons stated, the Court **RECOMMENDS** that the District Judge

**GRANT** the Poors' pending motions (DE #55, 56).  The improper seizure results in

suppression of Cody Poor's FedEx package and all resulting evidentiary fruits, including

those flowing from the warrant-based search of the Poor home and the associated Poor

interviews.[5]

\* \* \* \* \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning

this recommendation, issued under subsection (B) of that statute. As defined by §

636(b)(1) and Federal Rule of Criminal Procedure 59(b), within fourteen days after being

served with a copy of this recommended decision, any party may serve and file specific

written objections to any or all portions for de novo consideration by the District Court.

The parties should consult the aforementioned statute and rule for specific appeal rights

and mechanics.  Failure to object in accordance with Rule 59(b) waives a party's right to

review.

This the 9th day of March, 2012.



Signed By:

_Robert E. Wier_

**United States Magistrate Judge**

---

[5] The nature of the ruling makes it unnecessary to address Defendants' independent delay
argument relative to the dog sniff.